## George A. Ditewig, Appellee, v. Peoria Railway Company, Appellant.

### Gen. No. 5424.

CONTRIBUTORY NEGLIGENCE—*when chauffeur injured in collision guilty of.* Held, under the evidence, that a chauffeur injured in a collision with a street car was guilty of such contributory negligence as barred his recovery.

Action in case. Appeal from the Circuit Court of Peoria county; the Hon. LESLIE D. PUTERBAUGH, Judge, presiding. Heard in this court at the October term, 1910. Reversed. Opinion filed March 16, 1911.

PINKNEY & McROBERTS, for appellant.

DAILEY & MILLER, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

George A. Ditewig, the appellee, was the owner of the automobile, the injury to which by a collision with a street car of the Peoria Railway Company, the appellant, was described in Walsh v. Peoria Railway Company, 157 Ill. App. 453, wherein we reversed a judgment recovered by Walsh, chauffeur and employe of appellee, for injuries sustained by him in the same collision. That case was tried at the January term 1910, of the Circuit Court. This case was tried at the March term, 1910, of the Circuit Court, and, after a *remittitur,* appellee had a judgment for $3,761.79 for the injury to the automobile in said collision, and the street car company appeals. The first count of the declaration charged negligence and mismanagement in the driving of the street car. The second count charged a failure to sound a gong for a distance of 100 feet from the intersection of the two streets where the collision occurred, as required by an ordinance.

The third count charged failure of appellant to observe an ordinance which required those in charge of a street car to keep a vigilant watch for carriages, etc., on the track, and on the first appearance of danger to stop the car in the shortest time and space possible. As it is claimed that there was more proof heard in this case than in the Walsh case, and that here some witnesses were impeached or contradicted, we deem it proper to discuss the evidence more fully than we did in that case. For brevity, a street car will be called a car and the automobile the auto; and though this record shows Monroe street running northeasterly and southwesterly and Morgan street crossing it at right angles, those directions will be described as north and south and east and west.

Monroe street runs north and south, and north is up hill. Morgan street runs east and west and west is up the bluff. Madison street is next east and Perry street next west of Monroe street and parallel with it. Evans street is next north and Wayne street next south of Morgan street and parallel with it. Appellant operated a double track street railway on Monroe street. The collision occurred at 3:55 P. M. on January 29, 1909, during a blizzard or snow storm and high wind. Car No. 229 was going north on Monroe street on the east track, and stopped at the north side of Morgan street or a little further north and all its passengers there alighted. On the east side of the street a funeral procession was going north, and the last carriage passed car 229 while passengers were alighting. Walsh was driving appellee's auto, and had left appellee at his place of business and was going north on Monroe street for the purpose of going to appellee's home, which was on Madison street, north of Morgan. When he came nearly to the standing car discharging passengers, he turned west. It is appellee's claim that he was headed up Morgan street be-

tween its curb lines intending to go west to Perry and then north, taking this roundabout way to go to appellee's home, and that, while he was on the intersection of the two streets, appellant's south bound car No. 232 struck the auto inflicting the injury complained of. It is appellant's contention that Walsh did not turn to drive up Morgan street, but that he swung round the rear of the standing car and turned diagonally across the south-bound track, intending to go up Monroe street on the left hand side, in order to get ahead of the standing car and of the funeral procession, and that he ran into the down bound car at the north line of Morgan street or still further north. It is necessary to consider the evidence on this question.

Walsh testified that he never drove by a funeral procession; that though Perry street was the longer way to appellee's home and though both Madison street and Perry street were asphalted, yet he chose to turn on to Perry because the asphalt was somewhat broken on Madison; that he passed beyond the center of the two streets and then turned west from seven to ten feet behind the standing car and turned up Morgan street, when he was struck by car 232 going down; and that he had not travelled six feet from the time he turned till the car hit the auto. Ford testified that he was standing on the rear platform of car 229, facing south, and saw Walsh turn the auto up Morgan street and that at the time of the collision Walsh was at or a little below the center of the intersection of Morgan and Monroe. Loomis testified that he was one half block west on Morgan driving a team east and saw the car strike the auto, and that at just about that time the auto was pointed directly towards him, and that when the auto turned towards him it was ten or fifteen feet above the intersection of the streets. Ruey, motorman on car 232, testified that when his car was six or eight feet above the north line of Morgan

street the auto whipped around the end of the stand-
ing car and struck his car before it got to the north
line of Morgan. Hitchcock, a passenger on car 233
which was going south about a block ahead of car 232,
testified that he was standing on the rear of car 233
and saw the standing car and the funeral procession
and saw this auto, and that the driver of the auto made
a double turn; that he first turned up Morgan till he
crossed the first track and then he turned diagonally
up Monroe street slanting, and that it appeared to the
witness that the auto was one half a car's length above
the crossing before the collision took place. Mrs.
Gmelich was a passenger on car 232 and testified that
the car had not got as far south as the sidewalk when
it was struck by the auto. Taylor, conductor on car
232, testified that the auto came around the angle of
car 229 and that the collision occurred about the upper
line of Morgan street. Piper was the motorman on
car 229. He testified that after the collision he got off
his car and saw the tracks of the auto in the snow where
it had been pushed sideways by the street car and
turned around, and testified that those tracks of the
auto ended just above the upper line of Morgan street,
which indicated that that was where the northward
progress of the auto was arrested. Sprague, con-
ductor on car 229, testified that he was standing in
the rear vestibule or south end of his car where it was
discharging passengers; that the auto crossed over
the tracks five or six feet behind his car and hit car
232 when it lacked four or five feet of having reached
the south end of his car. There was therefore a very
clear preponderance of direct testimony that the col-
lision occurred about the north line of Morgan street
or still further north. Certain circumstances in proof
tend to the same conclusion. The controller in the
front vestibule of car 232 was bolted to the floor with
two one-half inch bolts and there were two brace irons
at the top, one-half an inch wide by a quarter of an

inch thick, bolted to the vestibule. The controller weighed between 250 and 300 pounds. The force of the collision knocked down the motorman and knocked the controller loose and it fell on top of the motorman. The car continued in motion because the power was on. The right front wheel of the auto caught in mechanism at the southeast corner of the car and the auto was forced around and dragged along with the car. It was not until the conductor, who was standing in the north end of the car and who was flung headlong to the floor of the car, had arisen and gone to the front and lifted the controller off the motorman that the latter got up and turned off the power at a switch in the top of the vestibule, and it was only then that the car stopped. Many witnesses, some of those named and some we have not named, some employes of appellant and others passengers and still others, men on the street, testified that the car moved 25 to 30 feet after the collision and stopped with its south or front end somewhat north of the center of Morgan street, and that, after its stop, the rear vestibules of the two cars overlapped each other, so that the north end of car 232 was above the north line of Morgan street. Car 232 was 28 feet long from bumper to bumper and each vestibule projected about three feet and two inches beyond the bumper. Morgan street was 79 feet wide and the distance between the curbing of Morgan street at the west line of Monroe street was 30 feet, leaving 49 feet outside of the curbing, or 24½ feet from the north curb line of Morgan street to the north line of the street. If Walsh had turned to go up Morgan street he must have been at least 25 feet south of the north line of Morgan street. But it is evident from the length of time the car was in motion after the collision before the power could be cut off, and from the place where it stopped, that the collision did not occur south of that north curb line but must have occurred decidedly north of that curb line, and at the north line of the street or still further north. While there

was a little evidence tending to show that the car
stopped further south than we have stated, yet that
evidence was but slight and was entirely overborne
by the great preponderance of the proof. We are
forced to the conclusion that Walsh was not trying to
drive his auto west on Morgan street, but that he was
driving it up the left side of Monroe street and was
crossing the south bound track diagonally, intending
to get around the standing car and the funeral pro-
cession.

The speed of the auto is material here. Walsh tes-
tified that he was driving at from ten to fifteen miles
per hour up Monroe street; that when he got near the
funeral procession he slowed down to from four to
six miles per hour; and that when he crossed the tracks
behind car 229 he was not going over five or six miles
per hour. But he also stated that his auto had four
speeds, number one the lowest and number four the
highest, and that it was capable of 12 miles per hour
on first speed, of 20 miles per hour on second speed
and of 30 miles per hour on third speed, and that he
had been running on second speed up Monroe street
and also that as he was following the funeral proces-
sion he was on third speed. Fuller, conductor on the back
end of car 233, running a short distance ahead of car
232, testified that Walsh passed him going north about
two-thirds of a block south of Morgan street and that
Walsh was driving with his head down and at about
20 or 25 miles per hour. Hitchcock, a passenger stand-
ing on the rear of said car 233 and facing north, first
saw the auto about the center of the block between
Wayne and Morgan, and watched it till the collision
occurred and he testified that in his judgment it was
running at from 20 to 25 miles per hour from the time
he first saw it till it hit the street car. Sprague, con-
ductor on car 229, testified that when the auto turned
to cross the tracks back of his car, it was running at
from 20 to 25 miles per hour. The fact that the auto

was being run at great speed is further shown by considering the speed of car 232 with which it collided. Clark, driver of a carriage in the funeral procession, testified that when car 232 passed him it was running three or four times as fast as the funeral procession, but that this was above the center of the block above Morgan and he did not know at what speed it ran after it passed him. Anderson, driver on the third carriage from the rear of the funeral procession, testified that the procession was moving about three miles per hour and that car 232 was going about three times as fast when it passed him about the center of the block. Ruey, the motorman on car 232, testified that from Evans street down he was running about four miles per hour and that he slowed up as he approached Morgan street because car 229 was letting off passengers and he was watching to keep from running over passengers who might come around the back end of that car. Mrs. Gmelich, a passenger on car 232, testified that it was going very slowly. Eaton, another passenger thereon, testified that it was not going over four miles per hour at any time after he got upon the car, and no faster than he could walk. Taylor, conductor on car 232, testified that it had been going about four miles per hour for three or four blocks. Piper, motorman on car 229, testified that he had noticed car 232 about the middle of the block north of Morgan street, that it was then running at from five to six miles per hour, and that before it reached car 229 it slowed down to about three miles per hour. Whatever may be thought as to the value of such evidence as to the speed of an auto and a car, it is obvious that it is extremely probable that car 232 was brought to very slow speed as it came to car 229, which was standing still and discharging passengers on the east side. Common experience teaches that it would be extremely dangerous to drive a car past a standing car under such circumstances, except at very slow speed and

with the car under complete control, so that the motorman could almost instantly stop it if a person came around the rear of the standing car. But the great destruction wrought to the auto and to the street car shows that one vehicle or the other was going with great force. In view of all this evidence, and of the admissions of Walsh as to the speed at which he had been running and could run, and of the results of the collision we reach the conclusion that he was running at a very high and dangerous rate of speed and on the side of the street where he had no right to be. He was perfectly familiar with all the surroundings. He testified that he had driven up this street six or seven times a day nearly every day for two years; that he knew that street cars went up and down the street every few minutes and that there was likely to be a car going in one direction or the other at any time. He was bound to know that if a car was coming from the north his view of it would be intercepted by the standing street car. If he had been going up Morgan street, he would have been across the tracks entirely before car 232 reached the curb line, but he was seeking to drive diagonally across to the west side of Monroe street without any effort to ascertain whether or not a car was coming down. He claims that the funeral procession in some way intercepted his view of the approaching car, but this is impossible. The procession was over towards the east curb line and the street was straight, while he had his west wheels over the rail of the street car track and was not directly behind the procession. In our opinion the only conclusion to be drawn from this evidence, when it is all considered, is that he failed to exercise ordinary care and that his master's auto was injured because thereof. This is confirmed by the testimony of his own admissions shortly after the collision. Buey testified that Walsh twice said: "I know it was all my fault." Sprague testified to the same effect. Piper testified that Walsh said it was his fault. Eckleberry, an em-

ploye of appellant who was walking on the street and came there immediately after the accident, testified that some one asked Walsh: "Did the car hit you?" and Walsh answered "No, I hit the car." Walsh denied that he made these statements, and two other men, who were about or near there after the accident, testified that they did not hear him say it.

We do not doubt from the evidence that the gong on car 232 was sounded for the 35 or 40 feet next north of the north line of Morgan street. Whether it was sounded while the car was passing over the first part of the 100 feet next north of Morgan street is not so clear. There is positive testimony by two witnesses that it was and negative testimony and impeaching testimony tended to show that it was not. But we are so clearly of opinion that the driver of the auto was guilty of such negligence as precludes a recovery, regardless of that question, that we deem it unnecessary to discuss the evidence on that question in detail.

The judgment is therefore reversed.

*Reversed.*

Finding of facts to be incorporated in the judgment: We find that appellee's servant was negligent in the manner in which he drove appellee's auto and that such negligence contributed to cause the collision in which appellee's auto received the injuries for which this suit was brought.